FILED
1.19.2022
CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

Case No.: 3.22- cv-67- MMH-LLL

---

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION

---

JAMES B. V. CROSBY, PLAINTIFF

v.

STATE OF FLORIDA, ET AL, DEFENDANTS

---

EMERGENCY PETITION

DEMAND FOR THE EFFECTIVE ASSISTANCE OF COUNSEL
DEMAND FOR PRELIMINARY AND PERMANENT INJUNCTIONS
DEMAND FOR SERVICE ON ALL DEFENDANTS
DEMAND TO AMEND COMPLAINT AT A LATER TIME
DEMAND FOR THREE-JUDGE DISTRICT COURT
DEMAND FOR DISCOVERY FOR SUBPOENAS AND EVIDENCE
DEMAND FOR WITNESS PROTECTION
DEMAND FOR JURY TRIAL

CERTIFIED COMPLAINT

---

TO BE FILED UNDER SEAL

---

## PRELIMINARY STATEMENT

1. This is a civil rights action in which Plaintiff seeks relief for the violations of his rights secured by 42 U.S.C. § 1983, 18 U.S.C. § 1964, 18 U.S.C. § 241 & § 242, the First, Fourth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and the laws of the State of Florida. The Plaintiff's claims arise from a series, pattern, and practice of official misconduct, corruption, and the deliberate indifference to inalienable human rights for both malice and corrupt motives as well as retaliatory acts. Plaintiff is unconstitutionally under attack because most of the continental United States have been involved in a racketeering scheme with the Department of Justice (DOJ) to commit fraud against the United States Government and the American People. Plaintiff seeks the immediate appointment of competent counsel, temporary and permanent injunctions, declaratory relief, compensatory and punitive damages in the amount of $1,400,000.00, additional damages under 18 U.S.C. § 241, §242, & § 1964 in an amount to be determined by the Court, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2. Jurisdiction is conferred upon this Court by Article III, § 1 of the United States Constitution, 42 U.S.C. § 1983, 28 U.S.C. § 1331, § 1332, & § 1343, and any other federal law granting relief from the prohibited activities explicitly listed in this complaint.

3. Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide any additional claims arising under state law.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the acts in question occurred within Duval County, State of Florida which is situtated in the Middle District of Florida and because Plaintiff and Defendants are subject to the personal jurisdiction in the Middle District of Florida. The harassment and fraud resulted from acts of cruelty and malice originating in Polk

County, State of Florida, several other counties in the State of Florida, and Washington D.C. that occurred due to the racketeering practices of both the federal and state governments.

5. Due to the corruption in the judicial system, illegally having been denied habeas relief within the Eleventh Circuit, official misconduct, and fear of violence from the Defendants that live in close proximity to the Plaintiff, he is seeking protection from the United States Government pending the discovery process, injunction proceedings, and any other proceedings resulting from the constitutional right to file this complaint.

## DEFENDANTS

6. State of Florida

7. City of Jacksonville

8. Chaney Metal Products

9. All State Steel

10. Shawn Fitzgerald

11. Ken Williams

12. Mark Jones

## PLAINTIFF

13. At all times the Plaintiff has resided in the State of Florida and has been a resident of Jacksonville, FL for more than six years.

## STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION

14. Plaintiff is an illegally convicted sex offender due to corruption and has diligently worked to prove that law enforcement are framing men as child predators through an illegal and unconstitutional program funded by the DOJ called the Internet Crimes Against Children (ICAC) Task Force.

15. Plaintiff was illegally denied habeas corpus relief in January of 2015 and illegally denied an appeal by the Eleventh Circuit despite his actual innocence claim falling under 28 U.S.C. § 2241 due to corruption in the judicial system concerning a pattern and practice of violating federal law in violation of the RICO Act and the First, Fourth, Eighth, and Fourteenth Amendments. Plaintiff's complaints concerning judicial misconduct were illegally denied and he did not file a request for relief from judgment that was constitutionally permitted and legally required due to the corruption/prejudice. Plaintiff has been repeatedly illegally denied relief in prior post conviction proceedings due to the RICO conspiracy and prejudice despite the fact his plea was involuntary, he served and was sentenced to an illegal sentence, was sentenced illegally, had ineffective counsel, and many other facts that are evident in a sample FRCP 3.850 that Plaintiff also refuses to file due to prejudice and corruption that will be submitted as evidence for proof of claims.

16. Plaintiff has successfully proven his claims but has illegally been denied relief because of the conspiracy under RICO, prejudice, illegal collusion, and to prevent him from filing suit over his injuries to protect the conspiracy. The DOJ and State of Florida have been illegally hiding exculpatory and impeaching evidence to obtain and keep illegal convictions, namely Plaintiff's, by creating falsely alleged sex crimes for money to hide their liability and inflict cruel and unusual punishment against Plaintiff.

17. Plaintiff has successfully exposed a government conspiracy under RICO but due to a vendetta against him, the corruption in the judicial system, and prejudice he has not been successful at regaining his well earned freedom.

18. Plaintiff started a non-profit organization called "Florida Scandal" (FS) to prove that he was framed as a child predator by the federal government in violation of his constitutional rights.

19. Because of Plaintiff's efforts with FS, the State and federal governments have unconstitutionaly used the power of office to protect the conspiracy uncovered by him and have deliberately, unconstitutionally, and maliciously denied him relief to try to prevent him from obtaining relief due to an unconstitutional monetary incentive under the illegal ICAC Task Force created by the DOJ.

20. The State of Florida passed unconstitutional legislation in 2013 requiring sex offenders to register their online aliases and phone numbers in an effort to uncover Plaintiff's identity and involvement with FS. The State of Florida passed unconstitutional legislation to illegally support the unconstitutional ICAC program in 2006 because said legislation has unconstitutionally abolished the objective entrapment defense, the factual impossibility defense, the fantasy defense, and created a loop hole in the First Amendment allowing the government to illegally create falsely alleged sex crimes for money.

21. The State of Florida used a confidential informant known as Michael Lashman to illegally investigate Plaintiff in connection with his involvement with FS and a website called "Governing Us" created by Chris Saldana who was also illegally convicted as the result of the illegal ICAC Task Force.

22. Plaintiff has suffered from illegal investigations for over seven years due to a vendetta against him for proving that the states are framing men as child predators in violation of Due Process and the First Amendment.

23. Plaintiff has diligently helped several other American citizens regain their freedom and the State of Florida has been illegally retaliating against him and several other citizens over their efforts to expose the conspiracy. Three such cases are David Miller, Chad Siperly, and Samual Odom Jr.

24. Because of his efforts to uncover a government conspiracy orchestrated by the DOJ, he remains illegally convicted and his efforts have caused unconstitutional retaliatory acts committed by the State of Florida and the City of Jacksonville.

25. The unconstitutional sex offender registry has forced Plaintiff to be even more retaliatory than he was before and is not doing anything to him but ruining his life.

26. The uncontitutional sex offender registry has caused Plaintiff more grief and heartache above and beyond what the original illegal conviction caused and is unconstitutional being punitive in nature and is not protecting society but harming him.

27. Plaintiff was trying to live his life with the woman that he loves but has been unconstitutionally deprived of that right due to his illegal conviction, the registry, and the illegal ICAC Task Force conspiracy. The unconstitutional situation is grievous causing him to suffer from severe clinical depression and dangerous thoughts of suicide, murder, genocide, infanticide, and treason.

28. The woman that Plaintiff loves, Karen Joy Frey, has been subjected to the illegal investigations performed by the City of Jacksonville just because she was with an illegally convicted sex offender. Because of the unconstitutional infirmities in his life, she has left him despite his extreme grief, sorrow, suffering, and inability to repair his broken life and support her due to government corruption. She refuses to be with Plaintiff because all of society, her friends and family included, wrongfully believe that he is a child predator, career criminal, and he cannot maintain gainful, steady employment. Thus, the sex offender registry is unconstitutional because it causes society and law enforcement to inflict cruel and unusual punishment upon him.

29. The Plaintiff has been harassed for years and illegal and unconstitutional investigations caused undue stress in his relationship with Frey resulting in an overwhelming desire to end his life

because it is already over due to government corruption. Frey, became so exasperated over his situation (and being illegally investigated herself) that she left him for another, already established, man.

30. Plaintiff has suffered in violation of the United States Constitution under color of law because of the illegal investigation and arrest on April 1, 2007. The Polk County Sheriff's Office (PCSO) was paid by the DOJ on February 5, 2007 in violation of due process to frame him as a child predator. Plaintiff had a constitutionally protected conversation on a pornographic, adult website with what he knew to be a fake person claiming to be a minor that was soliciting him for sex. Plaintiff was merely drunk and exercising his First Amendment rights to "talk trash" and when he tried to uncover the true identity of said fake person the PCSO destroyed evidence of his innocence proving subjective and objective entrapment, falsified the arrest report, and illegally tracked his cell phone to coerce him into showing up to an undisclosed location for the purposes of just meeting after Plaintiff had already decided to not show up. The next day, the PCSO violated Plaintiff's constitutional rights further by lying to society through the press stating he was a child predator, did not use adult dating websites for stings to avoid the appearance of entrapment, was caught red-handed, and had a "lame excuse" as to why he did not admit to the lies created by the government for money.

31. Plaintiff was illegally targeted by a bartender and law enforcement to harass and stalk him resulting in an unconstitutional dui conviction in 2008 because law enforcement lied on the stand and an unknown witness did not come forward until after it was too late. This was due to the constitutional violations of lying to society about Plaintiff being a child predator.

32. Plaintiff has been illegally harassed by society and law enforcement over the illegal arrest and conviction and his efforts exposing the conspiracy.

33. The Jacksonville Sherriff's Office (JSO) have been illegally harassing and investigating Plaintiff since before the illegal denial of his federal habeas corpus petition.

34. The JSO performed another illegal ICAC operation just before he was illegally denied habeas relief in January of 2015 to taunt him and were colluding with his federal judge to illegally deny him relief.

35. The JSO have illegally tried to sell Plaintiff child pornography through his email.

36. The JSO have illegally sent undercover officers to his job at Steve's Tire Empire to try to get him to have sex with an approximately 9 year old girl.

37. Plaintiff was assaulted by his boss Steve when he tried to collect money from him that Steve deliberately deprived him of because he is an illegally convicted sex offender.

38. The JSO tried to illegally arrest Plaintiff for assault over the incident even though he was merely protecting himself after having been stolen from and assaulted.

39. Plaintiff has been repeatedly and illegally denied employment by, including but not limited to, Boeing, Charles & Georges Car Wash, CitiCard, and Amazon over the illegal conviction and being required to register as a sex offender.

40. Plaintiff has repeatedly been denied housing over the conspiracy and has been repeatedly refused companionship due to the illegal propaganda distributed by the state and federal governments stating that he is a child predator.

41. The conspiracy Plaintiff has uncovered is indirectly responsible for the death of his father who could not retire because he needed to support him.

42. The conspiracy has caused Plaintiff to be assaulted by several citizens including an incident starting at "Famous Sandwiches" where a man followed him to an abandoned lot to assault him and his son.

43. The sex offender registry is unconstitutional and has been declared so in several other states. The registry is punitive not just because of the facts stated in this complaint but also because it is literally lifetime probation. Plaintiff has to pay to register just like probation in violation of the constitution. He has to check in twice a year just like probation in violation of the constitution. He has to register his phone and voluntarily submit himself to lifetime gps tracking through cell phone services in violation of the constitution. He is consistently denied employment and harassed in violation of the constitution.

44. The sex offender registry is unconstitutional because it prevents Plaintiff from working, obtaining housing, causing him and his loved ones to be the target of assault and illegal investigations, illegal lifetime gps tracking through cell phones, making him pay to register, requiring him to register his place of employment causing more employment problems, and several other punitive issues.

45. Frey has had to transfer her place of employment due to her and Plaintiff being harassed by her coworkers.

46. Frey has been illegally stalked and harassed by her coworkers and law enforcement (including JSO and the Clay County Sheriff's Office) due to the unconstitutional registry and the vendetta against Plaintiff causing undue stress on their relationship and fear, torment, and anquish.

47. Plaintiff had to file a complaint with Frey's corporate office because they were being illegally stalked and harassed by her coworkers and were trying to illegally fire Frey.

48. Plaintiff is being illegally followed and investigated by JSO that started in 2015 due to him working out at a gym called Bailey's Gym and as retaliation for being the founder of FS.

49. The illegal investigations ultimately resulted in the arrest of Plaintiff because he forgot to register his place of employment and out of fear of losing his house he did not register his place

of employment.

50. Coworkers of Plaintiff stated that he did not deserve to live and work but only deserved a bullet in his head.

51. Plaintiff was bailed out of jail and was illegally assaulted and rearrested again by JSO the same day because he was trying to take a picture of a cop car that had been involved in the illegal investigations against him.

52. Plaintiff was trying to prove that the registry is unconstitutional because it was causing him to be harassed, stalked, and assaulted by society and law enforcement.

53. Four off-duty police officers at a Bailey's Gym illegally detained Plaintiff and illegally prohibited him from going to any Bailey's Gyms.

54. Knowing that he was being illegally arrested he demanded a superior officer to release him but the superior officer falsified the police report and unconsitutionally arrested Plaintiff.

55. Internal affairs refused to investigate the falsified police report and illegal dentention and JSO refused to withdraw the falsified police report.

56. Plaintiff was illegally facing 4.5 years in prison over the unconstitutional arrests and would have lost his house and his fiance, Frey, who broke-up with him due to the undue stress and illegal detentions. Frey has ultimately left Plaintiff over the unconstitutional infirmities in his life and fear of being arrested herself for aiding and abetting an illegally convicted sex offender to elude law enforcement.

57. After getting into an argument on the telephone with the superior officer who falsified the police report, Plaintiff came into contact with what he believed to be an undercover officer performing another sting on an adult, anonymous chat room.

58. Plaintiff was mocking the officer and taunting him or her who was pretending to be a 12

year old and he sent a picture of his genitals mocking the illegal tactics used during stings.

59. Plaintiff has performed several stings on law enforcement but went too far in this one because he was angry at JSO, the City of Jacksonville, and the State of Florida for trying to get him to lose everything he had just because he is an illegally convicted sex offender and, most importantly, a falsely alleged child predator that was framed for money.

### FIRST CAUSE OF ACTION AGAINST STATE OF FLORIDA
### UNCONSTITUTIONAL CONSTRUCTIONAL DEFECT OF GOVERNMENT
### UNDER 42 U.S.C. § 1983 & 18 U.S.C. § 241 & § 242

60. Because of the falsified police report and being illegally rearrested again on the same day, Plaintiff's judge found probable cause at arraignment despite his many rebuttabals and seeking to dismiss the false instrument.

61. The public defenders office refused to act, the prosecutors office refused to act, and the judge refused to act because of prejudice.

62. The prosecutors office was illegally offering Plaintiff 3.5 years in prison for failing to register his place of employment and the judge and public defender's office were not doing anything about it. Under the law, Plaintiff was only required to serve six months house arrest and had to demand it himself before anyone would act.

63. The judicial system in Jacksonville is corrupt and are not upholding their oaths of office, are illegally working with the State to obtain illegal convictions, and are being prejudicial towards sex offenders refusing to give them justice.

64. Plaintiff's judge, Bass, allowed the State and the public defenders office to illegally convict a man arrested in an illegal ICAC operation in violation of State v. Shelly before his hearing in February of 2019 concerning the six months house arrest.

65. When Plaintiff brought it to the attention of his public defender, Lisa Carter, she told

him to mind his own business even though it was his business that the judicial system is more corrupt than it was when it illegally convicted him the first time.

66. Plaintiff was promised that he would get credit for the 36 days in jail that he illegally served due to his bond being revoked over the falsified arrest report.

67. Plaintiff had to demand recusal of his first judge due to prejudice because she refused to listen to him concerning the facts behind the falsified police report.

68. Despite Plaintiff getting credit for the illegal time served, judge Bass refused to issue an order on a motion trying to correct the sentencing error so the State could investigate him longer for the sting that he had performed on law enforcement.

69. The judge was working with Plaintiff's probation officer, Kimberly Petway, to try to get him illegally arrested for the sting incident and did not issue an order on the motion he filed well before he was due to complete his probation until two months after he was off of probation.

70. Petway requested that Plaintiff call the judges office even though he never told her about the motion that he had filed to try to track his cell phone to get a match on the signal received during his sting operation.

71. The judges office was illegally colluding with the State to try to get him arrested for an alleged crime that they were trying to falsify.

72. Had it not been for the sting that Plaintiff had performed, the State and entire judicial system were not going to dismiss the falsified indictment against him that he was illegally facing one year in jail for and would have lost his house.

73. Plaintiff's defense counsel from the Regional Conflict Committee, Janine Seymour, made it a point to ask him what they were going to do about him being a sex offender. He told her that it did not have anything to do with it other than the fact that he was being unconstitutionally

harassed by everyone, including the judges, in violation of his constitutional rights and that's why the police report was falsified.

74. Plaintiff's sting was not illegal because under Supreme Court precedent, face to face meetings are required to determine if the transmission of harmful material to a minor had been violated yet the State and JSO are still illegally investigating him and his ex-fiance even though the statute of limitations expired one week before Thanksgiving 2021.

75. Plaintiff performed a sting on law enforcement as retailiation for violating his constitutional rights, trying to get him to lose his property and fiance, years of repeated harassment, and messing up his life. Then, when law enforcement kept pursuing it just like they shouldn't have he turned it into a "teaching tool" to show them how hard a real police work is and what a really angry citizen can do.

76. Had JSO not put an illegal wire tap on his phone they would not have known anything about him and he could have went on living his life and would still be with his fiance. Instead, they continually harassed him at his places of employment trying to illegally arrest him for a falsely alleged crime they were trying to pin on him in violation of the First Amendment and Due Process.

77. Because of Plaintiff's illegal record and having judges like Bass "in their pocket", the State thinks that it can illegally convict him again of another falsified sex crime and will not leave him alone.

78. The system of checks and balances is dead and the State intends to use corrupt judges to "hamstring" Plaintiff into another illegal conviction at the hands of the illegal ICAC Task Force.

79. Plaintiff's sting has proven that the government is corrupt, the ICAC Task Forces can frame someone as a child predator for money but cannot actually catch someone intending to frame the government to get justice, and that the sex offender registry is doing nothing more than

ruining his and his ex-fiance's life. The sex offender registry is not doing anything to protect the public and has not helped the State catch him and has ruined his relationship with the woman he loves.

80. The sex offender registry has caused Plaintiff to be illegally denied justice due to prejudice and should be abolished on those grounds alone.

81. Plaintiff has evidence of several other corrupt judges throughout the State of Florida and has an attorney as a witness to testify concerning the illegal collusion occurring between the State and the judicial system to illegally deny him relief to protect the conspiracy.

82. This illegal collusion has caused a constructional defect in the judicial system that is currently helping JSO illegally investigate Plaintiff to try to frame him for a falsely alleged crime that the statute of limitations has expired on.

83. The unconstitutional registry forced Plaintiff to move his finace out of his house because she did not want to register her vehicle for fear of being harassed further causing unconstitutional and undue stress on their relationship and lives. Moreover, Plaintiff was concerned for her safety as she was aiding and abetting him to keep him out of jail over the sting he performed.

84. Plaintiff repeats, reiterates, and realleges each and every allegation/fact contained in this complaint as if fully set forth herein. Plaintiff is using said facts to allege that the State of Florida has an unconstitutional constructional defect in government through illegal collusion and prejudice that has destroyed the system of checks and balances and purposefully, maliciously, and repeatedly denies constitutional rights to convicted (or accused) sex offenders regardless if they are illegally convicted or not thus purposefully, deliberately, maliciously, and repeatedly keeping them illegally convicted or getting them illegally convicted.

85. Plaintiff is using said facts to demand relief from the State of Florida in the form of an injunction prohibiting it from requiring him to register as a sex offender as it is unconstitutional, ruining his life, and he is illegally convicted due to the registration requirement and fraud being committed by the State of Florida and DOJ.

86. Plaintiff is using said facts to demand compensatory and punitive damages from the State of Florida for this cause in the amount of $100,000.00.

## SECOND CAUSE OF ACTION AGAINST STATE OF FLORIDA
## PRECONCEIVED MALICIOUS PROSECUTION UNDER
### 42 U.S.C. § 1983 & 18 U.S.C. § 241 & § 242

87. Plaintiff repeats, reiterates, and realleges each and every allegation/fact contained in this complaint as if fully set forth herein. Plaintiff is using said facts to allege that the State of Florida is attempting to maliciously prosecute him in violation of his constitutional rights over a falsely alleged sex crime simply because he is an illegally convicted sex offender and intend to violate, and are violating, the law to frame him to make money from the federal government and rip off the American people.

88. Plaintiff is using said facts to demand relief from the State of Florida in the form of an injunction prohibiting it from any further investigations into Plaintiff and his ex-fiance.

89. Plaintiff is using said facts to demand relief from the State in the form of an injunction prohibiting the arrests of Plaintiff and his ex-fiance from any alleged criminal acts pertaining to his sting.

90. Plaintiff is using said facts to demand compensatory and punitive damages from the State of Florida for this cause in the amount of $100,000.00.

## THIRD CAUSE OF ACTION AGAINST STATE OF FLORIDA
### ILLEGAL INVESTIGATIVE TACTICS UNDER
### 42 U.S.C. § 1983 & 18 U.S.C. § 241 & § 242

91. After Plaintiff had successfully completed house arrest because he deliberately framed the government, the investigation into him and his fiance should have been over.

92. However, out of fear of arrest because Plaintiff knew that he went too far with law enforcement he told his neighbor Shawn Fitzgerald, who was supposed to be his best friend, Shawn's girlfriend, his fiance, and his sister about the incident before law enforcement and the State could have the opportunity to lie about what had happened and frame him again.

93. It was Plaintiff's sister that gave him the idea to turn the sting into "a wild goose chase" and frame so that he could save his house and get justice.

94. Knowing that law enforcement illegally tracked Plaintiff's cell phone to frame him as a child predator on April 1, 2007 he deliberately kept buying cell phones and throwing them away to toy with law enforcement.

95. Suspecting that his neighbor Shawn Fitzgerald was working with JSO, Plaintiff deliberately had him take him to the store to buy him a cell phone that he never used and threw away.

96. Plaintiff also deliberately bought a cell phone from Shawn's son that he never used.

97. Plaintiff obtained confirmation that Fitzgerald was working with police when he overheard another neighbor named Wayne talking to someone on the phone about the incident.

98. Plaintiff heard him say: "Who Karen? That's her car. She's in on it too. I'll get him out of here." Proving prejudice and a vendetta to remove him and his fiance from the neighborhood and illegally deny him due process and of his property.

99. JSO had Shawn Fitzgerald text Frey to try to have sex with him to try to get a match on

the gps signal from Plaintiff's truck.

100. JSO had Ken Williams steal Plaintiff's tag to try to have him pulled over to get a match on the gps signal from his truck.

101. JSO had a confidential informant called Esik Mays hit the back of Plaintiff's truck to get a match on the gps signal from his truck.

102. Plaintiff and Fitzgerald had JSO looking for a phone that did not exist so when they could not find the phone they resorted to illegal tactics like infiltrating his places of employment to have them illegally investigate him, steal his tag, hit his vehicle, and use sex to try to obtain evidence.

103. The frame was getting better and better due to the proven pattern and practice of official misconduct and illegally investigating people through the illegal ICAC Task Force for falsely alleged and unconstitutional "sex crimes".

104. Plaintiff knew that JSO would resort to illegal investigative tactics just like the State has always done especially pertaining to the illegal ICAC Task Forces.

105. The State intends to lie about when the falsely alleged crime was reported and use the false testimony of Plaintiff's neighbors to try to illegally convict him. Proof of this claim is that just before the statute of limitations was due to expire, the State sent out notices asking people to report crimes. Also, Plaintiff's corrupt public defender, Lisa Carter, filed a motion for statement of particulars in January of 2019 about the incident. Furthermore, the incident involved law enforcement and not a minor so the incident did not even need to be reported.

106. The State illegally used Frey's coworkers to investigate her by providing her with communication equipment that had trackers inside it.

107. The State illegally used Frey's coworkers to twist her mind into believing that Plaintiff

was trying to frame her, instead of law enforcement, and caused her to call the police on him in November of 2021 giving them the signal match they needed. Afterwards, he was being followed by confidential informants, bus drivers, and law enforcement everywhere he went to try to illegally arrest him. The City of St. Augustine is even in on the conspiracy and have been following Plaintiff and Frey to try to illegally arrest them.

108. Plaintiff repeats, reiterates, and realleges each and every allegation/fact contained in this complaint as if fully set forth herein. Plaintiff is using said facts to allege that the State of Florida is illegally investigating him and his ex-fiance and are using illegal investigative tactics to frame them for falsely alleged sex crimes to make money from the federal government and rip off the American people.

109. Plaintiff is using said facts to demand compensatory and punitive damages from the State of Florida for this cause in the amount of $100,000.00.

## FOURTH CAUSE OF ACTION AGAINST STATE OF FLORIDA
## CONSPIRACY TO DEPRIVE RIGHTS UNDER
## 42 U.S.C. § 1983 & 18 U.S.C. § 241 & § 242

110. Plaintiff repeats, reiterates, and realleges each and every allegation/fact contained in this complaint as if fully set forth herein. Plaintiff is using said facts to allege that the State of Florida is engaged in a conspiracy to deny Plaintiff and his ex-fiance of their constitutional rights through illegal investigations, illegal investigative tactics, malicious prosecution, corrupt judges, unconstitutional as applied statutes, and the unconstitutional and illegal ICAC Task Force program to make money from the federal government and rip off the American people.

112. Plaintiff is using said facts to demand compensatory and punitive damages from the State of Florida for this cause in the amount of $100,000.00.

## FIFTH CAUSE OF ACTION AGAINST STATE OF FLORIDA
## RACKETEERING ACTIVITIES UNDER 18 U.S.C. § 1964

113. Plaintiff is currently being illegally investigated by overzealous law enforcement and several United States citizens employed by law enforcement to act under color of law because of repeated fraud and several other crimes in violation of the RICO Act.

114. This said fraud was adopted by an illegal but highly televised program called "To Catch a Predator" that was cancelled for framing men as child predators after Louis Conrandt, a prosecutor in Texas, committed suicide because he was getting framed during an episode. MSNBC was sued by Conrandt's sister for wrongful death after hiring an investigator that proved he was being groomed on an adult website and framed as a child predator on national television. Despite these facts, PCSO Grady Judd, the DOJ, and State of Florida adopted the illegal tactics regardless of the federal mandate and contract of law known as the Memorandum of Understanding (MOU) requiring strict adherence to the Operational and Investigative Standards (OIS) that have been codified into federal law.

115. Shortly before the suicide of Conrandt, Grady Judd was approached by the television show host Chris Hansen to participate in the illegal stings laying out the illegal tactics but he refused due to the involvement of "Perverted Justice".

116. Grady Judd went on national television imploring with other agencies to perform these illegal operations using his tactics in violation of the law and the mandated MOU and OIS that were being hidden by the governments.

117. One man arrested prior to 2006 was successful at getting vindicated due to the factual impossibility defense so law enforcement illegally lobbied the legislators to change the laws in violation of Supreme Court precedent, federal and state laws, and the federal and state constitutions to create unconstitutional legislation that supported the illegal operations to make

money.

118. The State of Florida has consistently and illegally lobbied and/or bribed Florida legislators to pass unconstitutional legislation and amend the Florida Constitution to deliberately deny the right of due process to citizens. These illegal amendments are partly the reason why Plaintiff is still illegally convicted and are part of the violations of the RICO Act because government employees are illegally using their powers of office to make money and violate the Constitution in violation of their oaths because they wrongfully believe they are above the law.

119. It took Plaintiff about two years (2010 - end of 2012) to find the first incomplete copy of the MOU and OIS (thanks to defense attorney Gary Schwartz) being hidden by the State of Florida and the DOJ but by that time the entire country had adopted the illegal tactics so the prejudice created against him was insurmountable. It was falsely and illegally alleged by the court that Plaintiff knew of the procedures simply because he was looking for something that he was told did not exist to force him to illegally plea. Plaintiff finally received a complete copy from his confidential informant within the DOJ right after Christmas 2021 stating that if any organization violates the MOU or OIS they are in violation of the RICO Act.

120. The federally codified ICAC Task Force program is unconstitutional regardless of the "safeguards" of the OIS and MOU because it has financially incentivized the creation of crime. The governments are only performing these illegal stings because they are paid to do it and they repeatedly violate the procedures because the amount of money received depends on the number of successful prosecutions. Thus, there is a financial incentive to hide the procedures, lie to the public, violate the constitutional rights of thousands of men, and frame them as child predators, namely the Plaintiff. Moreover, there is also a financial incentive to keep them illegally convicted and violate their consitutional rights with illegal investigations as is the case here.

121. The sting and frame performed by Plaintiff that has him unconstitutionally under attack is a prime example of how the statutes are unconstitutional, the stings are illegal, the repeated fraud being committed, and how the First Amendment is being violated if the government doesn't like how you express yourself. Plaintiff was basically telling law enforcement to suck his penis and daring them to come arrest him. This is why Plaintiff never asked for any pictures or volunteered his because he knew that he was conversing with law enforcement. He even called this alleged minor a pig. However, because they were pretending to be a minor law enforcement kept pushing Plaintiff and falsely alleged to the whole city that he showed a picture of his genitals to a minor just because they said they were a minor so everyone would try to put him in jail.

122. The unconstitutional legislation has made it a crime to express yourself on the internet in a sexual way to anyone in violation of due process and the First Amendment despite the fact that sexual expression is only illegal when you know the person is under 18. Furthermore, pertaining to the stings the Plaintiff was framed as a child predator simply because of things he said based off of the clear intent to seduce him and implant criminal predisposition with the illegal tactics used. The totality of the circumstances must be used to determine if a crime had been committed and mere expression alone cannot be a crime. However, the government has made the freedom of expression a crime for money and illegally destroyed evidence that proved his innocence to frame him as a child predator. The government is trying to frame him again using public sentiment and a falsely alleged criminal act that the government itself instigated by the repeated indifference to his constitutional rights.

123. Plaintiff repeats, reiterates, and realleges each and every allegation/fact contained in this complaint as if fully set forth herein. Plaintiff is using said facts to allege that the State of Florida has been involved in a racketeering scheme using the ICAC Task Force Program that

involves committing fraud, wire fraud, bribery (bribing judges, legislators, etc. to support the illegal ICAC program), extortion (forcing framed men to give up their possessions for falsely alleged sex crimes), libel, slander, blackmail, illegally and unconstitutionally targeting men looking for sex with women on adult websites to frame them as child predators, maliciously violating the law and constitution to obtain illegal convictions, and quite possibly other unknown crimes.

124. Plaintiff is using said facts to allege that the State of Florida is still involved in a racketeering scheme and are using unconstitutional legislation under said racketeering scheme to illegally deprive him of his rights to try to illegally convict him again to make money from the federal government and rip off the American people.

125. Plaintiff is using said facts to demand relief from the State of Florida under the provisions of the RICO Act. Plaintiff is also using said facts to demand compensatory and punitive damages from the State of Florida for this cause in the amount of $100,000.00.

### FIRST CAUSE OF ACTION AGAINST CITY OF JACKSONVILLE
### COLOR OF LAW ABUSES UNDER
### 42 U.S.C. § 1983 & 18 U.S.C. § 241 & § 242

122. Plaintiff repeats, reiterates, and realleges each and every allegation/fact contained in this complaint as if fully set forth herein. Plaintiff is using said facts to allege that the City of Jacksonville uses it's employees in all branches of government to commit illegal acts (even without cruelty and malice) under the guise of immunity (absolute or otherwise) and a falsely alleged oath to protect the constitution, uphold the law, and to impartially mediate and enforce the law.

123. The Plaintiff is using said facts to futher allege that the City of Jacksonville employees are evil, corrupt, and have illegally targeted him and denied him of his rights repeatedly for years due to his sex and illegal and unconstitutional sex offender registration status that they themselves

have maliciously and unconstitutionally forced upon him over prejudice to get money from the
federal government and to rip off the American people. Then further lie to the People and tell them
it is necessary for their protection to violate Plaintiff's rights using said unconstitutional sex
offender legislation causing them to inflict cruel and unusual punishment against him and his
loved ones in violation of those rights.

124. Plaintiff is also using said facts to allege that he is illegally being investigated to frame
him again under falsely alleged oaths under the protection of undeserved immunity as these
employees that have targeted him do not even follow the law nor do they know the law. Thus,
lawful immunity of any kind should never be given to someone that does not follow nor do they
know the law particularly a judge that is playing both sides of the field to obtain illegal convictions
or one that ignores submitted evidence that proves innocence to illegally convict or incarcerate
someone because of prejudice.

125. Plaintiff is using said facts to demand reform and declaratory relief stating that
government employees of any kind can be sued in their personal capacity for not upholding their
oaths, the constitution, or laws. It's time to actually expect these people to do their jobs instead of
just collecting a paycheck, looking pretty on a bench with a bow tie like Judge Bass while he
illegally works for the prosecutor, and doing whatever they want. This should lighten the load of
the appellate courts instead of avoiding the problem by illegally amending the Florida Constitution
to give them the ability to deny justice and due process to those, like Plaintiff, that require it. The
judge that illegally revoked Plaintiff's bond and cost him $3,000.00 should have paid him for what
she caused him to lose because she didn't know how to listen and she certainly didn't do her job.
She should have paid him for the money that he spent while he was in jail and for the hell that his
ex-fiance put him through for being in there! The Supreme Court failed to see that immunity

corrupts and immunity is unecessary when the laws and constitution are being followed. Plaintiff would not even be illegally convicted right now if immunity was abolished! City of Jacksonville employees, particularly police officers, lie, ignore the law, violate the law, and their oaths and do not deserve their immunity! The City of Jacksonville, and the State of Florida for that matter, are not just, honorable, nor lawful so they do not deserve lawful immunity. Yet the Plaintiff is a "scumbag" just because he is a sex offender. Nevermind the fact he's illegally convicted. He's still a scumbag that has no rights.

126. Plaintiff is using said facts to demand compensatory and punitive damages from the City of Jacksonville for this cause in the amount of $100,000.00.

### SECOND CAUSE OF ACTION AGAINST CITY OF JACKSONVILLE CONSPIRACY TO DEPRIVE RIGHTS UNDER 42 U.S.C. § 1983 & 18 U.S.C. § 241 & § 242

127. Plaintiff was unconstitutionally required to wear a gps monitor that did not even work during the pretrial phase of his case. He was only required to wear it so Court Programs could extort money from him.

128. Plaintiff repeats, reiterates, and realleges each and every allegation/fact contained in this complaint as if fully set forth herein. Plaintiff is using said facts to allege that the City of Jacksonville is engaged in a conspiracy to deny Plaintiff and his ex-fiance of their constitutional rights through illegal investigations, illegal investigative tactics, malicious prosecution, corrupt judges, unconstitutional as applied statutes, and the unconstitutional and illegal ICAC Task Force program to make money from the federal government and rip off the American people.

129. Plaintiff is using said facts to demand compensatory and punitive damages from the City of Jacksonville for this cause in the amount of $100,000.00.

## THIRD CAUSE OF ACTION AGAINST CITY OF JACKSONVILLE
## JUDICIAL CORRUPTION UNDER
## 42 U.S.C. § 1983 & 18 U.S.C. § 241 & § 242

130. Plaintiff repeats, reiterates, and realleges each and every allegation/fact contained in this complaint as if fully set forth herein. Plaintiff is using said facts to allege that the City of Jacksonville has corrupt judges issuing illegal and unconstitutional orders and intends to use those judges to illegally convict Plaintiff again of a falsely alleged sex crime.

131. Plaintiff is using said facts to demand relief from the City of Jacksonville in the form of injunctions to stop the illegal investigations into him and his ex-fiance and prevent their unconstitutional arrests and impending illegal convictions due to judicial corruption and prejudice.

132. Plaintiff is using said facts to demand relief from the City of Jacksonville in the form of compensatory and punitive damages for this cause in the amount of $100,000.00.

## FOURTH CAUSE OF ACTION AGAINST CITY OF JACKSONVILLE
## RACKETEERING ACTIVITIES UNDER 18 U.S.C. § 1964

133. Plaintiff repeats, reiterates, and realleges each and every allegation/fact contained in this complaint as if fully set forth herein. Plaintiff is using said facts to point out that JSO also signed a contract with the DOJ on or prior to February 5, 2007 (before Plaintiff was illegally framed on April 1, 2007) to also participate in the illegal racket.

134. Plaintiff is using said facts to allege that the City of Jacksonville has been and still is involved in a racketeering scheme to make money by violating Plaintiff's constitutional rights.

135. Plaintiff is using said facts to demand relief from the City of Jacksonville under the provisions of the RICO Act. Plaintiff is also using said facts to demand compensatory and punitive damages from the City of Jacksonville for this cause in the amount of $100,000.00.

### FIRST CAUSE OF ACTION AGAINST CHANCEY METAL PRODUCTS
### CONSPIRACY TO DEPRIVE RIGHTS UNDER
### 42 U.S.C. § 1983 & 18 U.S.C. § 241 & § 242

136. Plaintiff had to tell a partial lie to his boss Anthony about why he was wrongfully terminated from Frattle Stairs and Rails and, luckily for him, his boss did not like the people at Frattle but, unluckily for him, had to take a two dollar an hour pay cut.

137. Also, luckily for him there wasn't a background check and nobody was nosey enough to look him up like they did at Frattle, at least to his knowledge.

138. Because of the illegal arrest, Plaintiff's bond was revoked and he had to sit in jail illegally in which time his boss did look him up.

139. After Plaintiff got out of jail, he went back to Chancey to work and Anthony stated that he did not want him working there after finding out about his record.

140. Plaintiff told him that he was the founder of FS and uncovered a government conspiracy to frame men as child predators for money. Anthony made him write him an email stating as such to try to convince the owner to let him have his job back. It wasn't until after the email that Anthony stated he could have his job back but this was just a ruse to help JSO illegally investigate him and the fact that he admitted to being the founder of FS fueled JSO to target him.

141. Plaintiff told his corrupt public defender Lisa Carter that he obtained his job back and she informed the State so they could continue the illegal investigation.

142. Chancey allowed two undercover detectives pretending to be gas tank installers come onto the property to question coworkers and illegally search through Plaintiff's belongings looking for a cell phone. Anthony deliberately made him go to the back of the facility to unload trucks while they conducted the warrantless search.

143. Plaintiff's immediate supervisor, Casey, was also working with law enforcement and

harassed him about leaving five minutes early so that he could allow a JSO police officer to get behind him in traffic to also look for a cell phone. The traffic controller stopped the traffic light to give the officer, or someone, time to look for the device. When traffic started backing up for miles, the controller changed the light and the officer sped off in disappointment.

144. Knowing full well what was going on because what Plaintiff actually did was frame the government to get justice, he had to quit his job because Anthony and Casey unknowingly told him that the police were coming to arrest him. Thus, he had to quit to keep from being illegally arrested again and Frey understood why. In the meantime, he had to get a presettlement loan that cost him $45,000.00 in interest so he could pay his bills while he was on probation and pay back the bondsman for the bonds he had to take out.

145. Chancey was acting under color of law as confidential informants to try to arrest Plaintiff for a falsely alleged criminal act not knowing that the act in question was protected by the First Amendment because it only happened out of anger over judicial corruption and official misconduct. Now that the statute of limitations has expired, Chancey is liable to Plaintiff for the money that he lost due to the interest paid out for the loan and lost wages.

146. There is no question that the statute of limitations has expired and the alleged act was not even criminal in the first place. Instead of doing their due diligence to investigate what law enforcement were lying to them about, Chancey decided to arbitrarily take the word of the detectives and help them illegally investigate Plaintiff because of his record. The proper thing to do would have been to demand that JSO get a search warrant but JSO could not get a search warrant because Plaintiff had not broken the law. JSO were just trying to make a case out of nothing by violating due process and the First Amendment just like they do during ICAC Task Force stings.

147. Plaintiff repeats, reiterates, and realleges each and every allegation/fact contained in this complaint as if fully set forth herein. Plaintiff is using said facts to allege that Chancey Metal Products was acting under color of law with law enforcement to perform an illegal investigation against Plaintiff to try to have him arrested over a falsely alleged sex crime thus being involved in a conspiracy to illegally deprive him of his rights under a racketeering scheme.

148. Plaintiff is using said facts to demand compensatory and punitive damages from Chancey Metal Products for this cause in the amount of $100,000.00.

### FIRST CAUSE OF ACTION AGAINST ALL STATE STEEL
### CONSPIRACY TO DEPRIVE RIGHTS UNDER
### 42 U.S.C. § 1983 & 18 U.S.C. § 241 & § 242

149. Shawn Fitzgerald had told Wayne about the incident shortly after Plaintiff started working at All State Steel. Unfortunately for him, Wayne knew someone that had worked there and Plaintiff had unwittingly told Wayne where he was working. Shortly after, a man who called himself Cowboy who was on probation with a gps monitor started deliberately hanging around Plaintiff asking him to move into his house.

150. All State allowed Cowboy to work next to Plaintiff to surveil him in an effort to look for a cell phone and harass him about moving into his house so they could use his gps device to get a signal match on his truck. Ultimately, Plaintiff believes that Cowboy's probation was terminated early because one morning him and two other coworkers, Kyler and Holden, were allowed by All State to go to Plaintiff's house with his gps device to get a signal match.

151. Legally, the State could not use the evidence until they had proof that the signal they had was coming from Plaintiff's truck so they had Ken Williams steal his tag so they could have an excuse to pull him over. However, Plaintiff had caught Ken stealing his tag using Shawn's video footage that Shawn was trying to convince him his efforts were futile because he wouldn't be able

to determine who it was. Knowing that Shawn couldn't be trusted, Plaintiff looked anyway and caught Ken stealing his tag on Shawn's camera.

152. Shortly prior to the tag incident, All State more than likely had an undercover detective hanging around everyone at work investigating who had cell phones. Also, because the camera footage at work was not that good, they had Holden buy Plaintiff a soda to give to him to drink so they could know what he looked like on camera. All State also made Plaintiff work by himself one weekend to try to get him to produce a cell phone and allow JSO to narrow down the signal search.

153. All State also performed a "random drug test" to try to find a cell phone that Shawn had told them Plaintiff had. They deliberately drove everyone in the company vehicle giving the excuse that they did not want anyone cheating on the test despite the fact that several bosses told several employees about the test so they could cheat. About three people failed the drug test but were not fired because the test was just a ruse to help law enforcement illegally investigate Plaintiff and illegally obtain evidence without a warrant.

154. When the tag incident did not work, All State colluded with the police to have Plaintiff followed home from work to allow a confidential informant known as Esik Mays hit the back of his truck to get a signal match. Plaintiff refused to get the cops involved because he knew what was going on and sure enough a mobile command unit and a cruiser drove by the convienient store that Plaintiff had driven to as to avoid police intervention where Esik Mays tried to sneakingly take a picture of his truck and of him.

155. It was then that JSO had the match that they needed and All State was working with police telling them when Plaintiff was leaving work so they could try to arrest him sending the police helicopter over the facility to confirm his location. Knowing what was happening, Plaintiff

went a different way home and disabled the gps controller in his truck and successfully dodged and

misled the police helicopter. He took all the back roads and when he finally did get near his house

he intercepted an undercover detective and a police cruiser that thought they were tracking

Plaintiff but were really tracking someone else.

156. Plaintiff was not going to go back to work the next day but decided to go anyway to

confirm his suspicions but he did not drive his truck and had his fiance drop him off late. He

pretended that there was something wrong with his truck and that's why he was late but, for

obvious reasons, his boss did not care. Everyone at All State were surprised to see Plaintiff and

even marveled at the fact that he was deliberately doing something to police and did not get

arrested.

157. The next day, Plaintiff started to ride his bike to All State but was intercepted by a

mobile command unit so he turned around and went back home. JSO were planning to arrest him

when he got to work. Later that day during lunch, Frey took Plaintiff to go get his tools and quit his

job to prevent him from being arrested.

158. All State Steel illegally colluded with law enforcment as confidential informants to

illegally obtain evidence without a warrant because of prejudice over his criminal record. The

statute of limitations is also the date this claim has accrued and law enforcement have still not been

able to obtain a warrant because no crime was committed and they cannot prove Plaintiff did

anything.

159. Plaintiff repeats, reiterates, and realleges each and every allegation/fact contained in

this complaint as if fully set forth herein. Plaintiff is using said facts to allege that All State Steel

was acting under color of law with law enforcement to perform an illegal investigation against

Plaintiff to try to have him arrested over a falsely alleged sex crime thus being involved in a

conspiracy to illegally deprive him of his rights under a racketeering scheme.

160. Plaintiff is using said facts to demand compensatory and punitive damages from All State Steel for this cause in the amount of $100,000.00.

### FIRST CAUSE OF ACTION AGAINST SHAWN FITZGERALD
### CONSPIRACY TO DEPRIVE RIGHTS UNDER
### 42 U.S.C. § 1983 & 18 U.S.C. § 241 & § 242

161. Shawn Fitzgerald is the main orchestrator behind the illegal investiations into the Plaintiff and his ex-fiance because he wants to take his home from him. He has on several occassions tried to get Plaintiff to sell him his house. Shawn was and is acting with several other neighbors as confidential informants to try to help law enforcement obtain evidence without a warrant because none of the neighbors want him around because of his falsified criminal record.

162. Shawn had Wayne and JSO follow Plaintiff and his fiance to Home Depot to try to get a signal match on the phones that Plaintiff made him think that he was using. He also had Ken Williams steal his tag. He also had Plaintiff take his son and a friend to Wal-Mart to try to get a match on the truck using the signal from their cell phones and the match previously obtained illegally by hitting his vehicle. He tried to use sex against Frey to obtain evidence for law enforcement. He has been illegally colluding with law enforcement and deliberately parking his vehicles outside of his garage to help JSO single out Plaintiff's truck. He has repeatedly tried to get Plaintiff to start up his truck to get a match on the signal previously obtained illegally. He made the mistake of warning Plaintiff about law enforcement following him to the store. Plaintiff knew that when Shawn stated "you better not be going to the store to get more beer" he was warning him that he was being followed so he disabled the entire gps system and went to the store to test the theory. Consequently, Plaintiff was followed to the store by law enforcement but could not be arrested because of there not being a signal.

163. Shawn has been illegally using his home video surveillance, namely a camera in his garage pointed right at Plaintiff's house and/or a camera in his window, to record and monitor him. Shawn also used it to record Mark Jones coming over to Plaintiff's house to obtain video evidence of Mark being there. Shawn left his garage door open while Mark knocked on the door. The reasons why will be explained in the cause of action against Mark.

164. Plaintiff had purchased a cell phone and used it to contact his ex-fiance Karen Frey and Sam Odom Jr. who was sending him evidence from a confidential informant in the DOJ (the evidence proving liability under RICO). Plaintiff used the public wifi at a Winn-Dixie to communicate with Odom.

165. Right after Jones left Plaintiff's house, Shawn closed his garage door and left on his bike and Plaintiff followed him. Shawn went somewhere where Plaintiff had used wifi to get a signal match from his phone because he was texting Frey for sexual favors.

166. Plaintiff told Shawn and his girlfriend, his sister, and his fiance the truth about the sting incident: That he believed he was messing with the cops and that's why he thought he might go to jail. Thus, it is also the truth that Plaintiff did not break the law but Shawn, JSO, and the State have been illegally obtaining evidence, illegally investigating Plaintiff and his fiance, illegally harassing them causing undue stress, anxiety, and harm to Plaintiff and his fiance because of prejudice. The Defendants all know that nobody would believe Plaintiff about the incident and set a conspiracy in motion to frame him in violation of due process and the First Amendment because of prejudice.

167. Plaintiff repeats, reiterates, and realleges each and every allegation/fact contained in this complaint as if fully set forth herein. Plaintiff is using said facts to allege that Shawn Fitzgerald is and always has been acting under color of law with law enforcement to instigate and

perform an illegal investigation against Plaintiff to try to have him arrested over a falsely alleged sex crime thus being involved in and starting a conspiracy to illegally deprive him of his rights under a racketeering scheme.

168. Plaintiff is using said facts to demand compensatory and punitive damages from Shawn Fitzgerald for this cause in the amount of $100,000.00.

## FIRST CAUSE OF ACTION AGAINST KEN WILLIAMS
## CONSPIRACY TO DEPRIVE RIGHTS UNDER
## 42 U.S.C. § 1983 & 18 U.S.C. § 241 & § 242

169. As previously stated several times, Ken Williams deliberately stole Plaintiff's tag to illegally help law enforcement send him to jail and get him out of the neighborhood. The most disturbing aspect about Ken Williams' involvement in the conspiracy is the fact that he actually believes Plaintiff is innocent of the alleged criminal act but helped anyway. Ken Williams specifically asked Plaintiff when he was going to stop messing with the cops. To which he replied that he wasn't going to stop because they ruined his life and until they fixed it it was going to get worse.

170. Plaintiff repeats, reiterates, and realleges each and every allegation/fact contained in this complaint as if fully set forth herein. Plaintiff is using said facts to allege that Ken Williams was acting under color of law with law enforcement to perform an illegal investigation against Plaintiff and in the process committed the felony of stealing his tag under color of law to try to have him arrested over a falsely alleged sex crime thus being involved in a conspiracy to illegally deprive him of his rights under a racketeering scheme and proving conspirators involved in said scheme will break the law to frame someone as a child predator.

171. Plaintiff is using said facts to demand compensatory and punitive damages from Ken Williams for this cause in the amount of $100,000.00.

**FIRST CAUSE OF ACTION AGAINST MARK JONES**
**CONSPIRACY TO DEPRIVE RIGHTS UNDER**
**42 U.S.C. § 1983 & 18 U.S.C. § 241 & § 242**

172. After the incidents that occurred with All State, Plaintiff and his fiance being followed to Home Depot, and other incidents; things went quiet for over a year. However, out of the blue Plaintiff and his fiance started being followed by law enforcement everywhere they went. A manager at "Sushi Cafe" in Riverside was even trying to get Plaintiff to produce a cell phone.

173. Plaintiff does not know how they did it but law enforcement managed to track the gps signal from his truck despite the fact that the controller was disconnected. However, it was not a very good track or signal due to the controller being unplugged and law enforcement were off by close to a hundred feet.

174. Plaintiff and his fiance witnessed several different law enforcement agencies tracking their every move. Law enforcement for the City of Orange Park tried to surveil them at the river behind the Moose Lodge on Roosevelt Blvd and at a park in Riverside. Law enforcement followed them around in St. Augustine, Orlando, and several other places and businesses but could not get a match because of the signal being off.

175. Fearful for her safety, Plaintiff was forced to stop seeing Frey and had been lying to his neighbors and so called friends like Jones and Shawn that Plaintiff and Frey had been broken up for quite some time. Plaintiff and Frey still managed to see each other in secret several times but were afraid to be seen in public. Plaintiff would hide and witnessed Frey being followed by law enforcement on several occasions.

176. Plaintiff decided to go to Mark Jones' house to use his wife's phone to contact Sam Odom (who was a witness in the illegal arrest case against him) to check on the status of his motion for post conviction relief using newly discovered evidence and to contact attorneys to represent

him on the same evidence.

177. While sitting on the porch, Shawn Fitgerald had rode by the Jones' residence on his bike to see if Plaintiff's truck was there. Plaintiff followed him and stopped him to ask what he was doing but Shawn had looked like he got caught doing something.

178. Shortly after, Mark's wife made it a point for them to sit as close to Plaintiff's truck as possible and kept offering to let him use her cell phone even though she never really liked him using it before. When that wasn't working because of the signal being off, she asked Plaintiff to take her to a restaurant around the corner to get food for lunch. She tried to get him to use his debit card because law enforcement were tracking it too but he made her pay and gave her cash for the food. Knowing there were cameras in the restaurant, Plaintiff wore a mask and never took it off.

179. Plaintiff knew what was going on and was not going to go back to the Jones' house but needed confirmation. Thus, he kept going back to see what would happen and Mark Jones would greet him in the driveway repeating Plaintiff's name over and over to notify the neighbors that it was him.

180. Shortly after, a mobile command unit drove by the Jones' residence that Plaintiff went looking for to see where it went. Then, two officers went to the neighbors house accross the street to give them a witness packet. It became apparent that the Jones' were the moles and the neighbors were the witnesses particularly because Mark's son Brandon Jones repeatedly kept asking Plaintiff what he did.

181. Shortly after the incident, Mark Jones left a note on Plaintiff's garage telling him to come to his house "Now!" Plaintiff of course ignored the note but then shortly after his son Brandon came by Plaintiff's house for days repeatedly knocking on his windows and door trying to get him to answer. After giving up, Brandon left a note on Plaintiff's door stating that his brother

had died of Covid and to ride his bike over to the Jones' house to use the phone thus giving Plaintiff the final confirmation that he needed. Plaintiff still does not know if his brother Jeff actually died or if that was just another ruse to get him arrested. This is due to the fact that Plaintiff's so called brothers Jeff and Dave were also trying to put him in jail.

182. After being followed to the store, the incidents that occurred with Shawn and Jones, and Plaintiff's drivers license being suspended; he could not drive anymore. This was a good thing but the damage had been done already. Plaintiff had purchased the cell phone just before Christmas 2021 previously mentioned because he knew the statute of limitations had expired on the falsely alleged sex crime and needed to find out what had happened with Sam Odom's case and get his life back together.

183. After using the cell phone to contact Odom and using a phone at a store, law enforcement had undercover officer's surveilling the stores that Plaintiff had visited. JSO had Mark Jones go to Plaintiff's house to get a match on the phones to track back to Plaintiff, had Shawn record Mark being there in violation of due process, and then had Shawn ride his bike to complete the "map" from the Jones' house, to Plaintiff's truck, and then to the restaurant.

184. After this, Plaintiff went on another surveillance mission to see what was going on. This is when he witnessed an undercover detective at the store with a tow truck waiting nearby that more than likely was actually undercover to protect the female undercover posted near the door. When he tried to get back into his neighborhood, there was a confidential informant pacing up and down the sidewalk to try to get a visual confirmation of Plaintiff and to track the cell phone that he just bought but already got rid of because of what had happened. Plaintiff turned around and went around the corner and up the street to witness the informant still there pacing and the neighbor in the culdesac with his garage door open (who had also been involved in the surveillance) watching

what was occurring.

185. Because of what was happening, Plaintiff left and stayed gone a lot longer than anticipated and noticed that he was being followed by a black van. When he finally did start to go back home, an undercover officer carrying a book bag started walking passed Plaintiff and stated "I'm passing him now." Law enforcement were trying to track the phone that Plaintiff no longer had so they could arrest him using the cell phones from strategically placed confidential informants. When they realized that Plaintiff knew what was going on, law enforcement sent a mobile undercover to try to track the cell phone.

186. Plaintiff repeats, reiterates, and realleges each and every allegation/fact contained in this complaint as if fully set forth herein. Plaintiff is using said facts to allege that Mark Jones was acting under color of law with law enforcement and Shawn Fitgerald to perform an illegal investigation against Plaintiff to try to have him arrested over a falsely alleged sex crime thus being involved in a conspiracy to illegally deprive him of his rights under a racketeering scheme.

187. Plaintiff is using said facts to demand compensatory and punitive damages from Mark Jones for this cause in the amount of $100,000.00.

## DEMAND FOR JURY TRIAL

188. Plaintiff hereby requests a trial by jury on all issues triable by jury.

WHEREFORE, Plaintiff demands judgment on each cause of action for a sum of $100,000.00 per cause for compensatory and punitive damages totaling $1,400,000.00 plus additional damages under 18 U.S.C. § 241, § 242, & § 1964 in an amount to be determined by the Court. Plaintiff has lost roughly $1,000,000.00 and has suffered from extreme anxiety, mental stress, torment, trechery, relationship problems, anquish, fear, and loss of liberty and freedom. Plaintiff demands injunctions to stop his unconstitutional sex offender registration and the illegal

investigation still being performed in violation of the U.S. Constitution. Plaintiff demands

declaratory relief stating that he is illegally convicted and seeks to remove those illegal convictions

from his record as well as other declaratory relief. Plaintiff demands redress because he is a

prisoner in his own home, was left by his fiance, and now has to relocate for fear of retaliation.

Plaintiff demands this relief as well as whatever this court deems just and proper.

Respectfully Submitted,

Date: _01/19/22_

James B. V. Crosby
2570 Eiffel Cir E.
Jacksonville, FL 32210