## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JAMES B. CROSBY,

        Plaintiff,

                              Case No. 3:22-cv-67-MMH-LLL

vs.

STATE OF FLORIDA, et al.,

        Defendants.

_____/

### O R D E R

**THIS CAUSE** is before the Court on Defendant City of Jacksonville's Motion to Dismiss Third Amended Complaint with Prejudice and Supporting Memorandum of Law (Doc. 53; Motion), filed on April 22, 2022. In the Motion, Defendant City of Jacksonville (the City) moves to dismiss this action with prejudice for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (Rule(s)). Plaintiff James Crosby, acting pro se, filed a response in opposition to the Motion on April 27, 2022. See Traverse and Dumur [sic] of Motion to Dismiss by City of Jacksonville and Memorandum of Law (Doc. 63; Response). Accordingly, this matter is ripe for review.[1]

---

[1] On December 14, 2022, Crosby filed a Motion to Reconsider Denial Without Prejudice Relief from Judgment and Other Orders and Demand for Disqualification Pursuant to Federal Law (Doc.115; Motion for Reconsideration). To the extent Crosby asks this Court to reconsider its December 5, 2022 Order (Doc. 113) denying his request that the undersign recuse herself

## I.      Standard of Review

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).   In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010).   Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted).   Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

---

from this action, the Motion is due to be denied.  For the reasons stated in the prior Order, there is no basis for recusal and as such, the undersigned is obligated to continue presiding over this matter.  See December 5, 2022 Order at 2-6.  To the extent Crosby asks the Court to reconsider various other aspects of the December 5, 2022 Order, his request will be denied as moot because, for the reasons that follow, the Court finds that the Third Amended Complaint is due to be dismissed in its entirety.

to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal" (citations and quotations omitted)). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678-79. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Moreover, when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Id. (citation omitted). And, while "[p]ro se

3

pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as <u>de facto</u> counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" <u>Alford v. Consol. Gov't of Columbus, Ga.</u>, 438 F. App'x 837, 839 (11th Cir. 2011)[2] (quoting <u>GJR Invs., Inc. v. Cnty. of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), <u>overruled in part on other grounds as recognized in</u> <u>Randall</u>, 610 F.3d at 706); <u>see also</u> <u>Campbell v. Air Jamaica Ltd.</u>, 760 F.3d 1165, 1168-69 (11th Cir. 2014).

## II.   Procedural History

Crosby initiated this action, pro se, on January 19, 2022.  <u>See</u> Certified Complaint (Doc. 1).  On January 21, 2022, the Court entered an Order (Doc. 6) striking the Complaint and providing Crosby with the opportunity to file an amended complaint.  <u>See</u> Order at 4-7, 10-11.  In the Order, the Court explained the pleading requirements applicable in federal court, including that a complaint must set forth a short and plain statement of the claim showing that

---

[2] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point.  <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

the pleader is entitled to relief, and state each claim discretely and succinctly without reliance on vague and ambiguous allegations.  Id. at 2-3.  In addition, the Court discussed the Eleventh Circuit's prohibition on shotgun pleadings.  Id. at 3-4.

The Court found that the Complaint constituted an impermissible shotgun pleading because Crosby improperly reincorporated all allegations of all preceding counts into each successive count of his fourteen-count Complaint. As a result, the Court faced "the onerous task of sifting out irrelevancies in order to decide for itself which facts are relevant to a particular cause of action asserted." Id. at 5.  In addition, the Complaint was "'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.'"  Id. at 5-6 (quoting Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1322 (11th Cir. 2015)).  Indeed, Crosby's Complaint spanned thirty-nine pages, with nearly 200 paragraphs of allegations.  Id. at 6.  The Court observed that:

> [w]hile long on allegations of conspiracy and wrongdoing, the Complaint is short on substance such that the Court is left to wade through pages of conclusory accusations in search of a coherent set of facts. Plaintiff's allegations also lack dates, timeframes, or any discernible chronology, making it impossible to follow the series of events that led to this lawsuit. Moreover, given the shotgun reincorporation of all allegations, the Court cannot determine which facts make up which causes of action much less what Plaintiff's specific claims are as to each Defendant.

5

See id.

The Court directed Crosby to file an amended complaint and explained that he must "avoid the shotgun pleading deficiencies set forth above and describe in sufficient detail the factual basis for each of his claims and how each Defendant is responsible." Id. at 6-7. Less than thirty minutes after entry of the Court's Order, the Clerk's Office docketed a motion from Crosby for leave to amend the complaint. See Motion Requesting Leave to Amend Complaint (Doc. 7). And, a few days later, Crosby filed his amended complaint. See Certified Complaint (Doc. 9; Amended Complaint), filed February 1, 2022. Upon review of the docket, the Magistrate Judge entered an order denying Crosby's motion for leave to amend and observed that Crosby appeared to have filed the Amended Complaint "before being notified of the Court's order striking his [original] complaint . . . ." See Order Denying Motion to Amend as Moot (Doc. 10) at 1. As such, the Magistrate Judge struck the Amended Complaint and directed Crosby to file a second amended complaint which complied with the Court's January 21, 2022 Order. Id. at 2. Crosby filed a second amended complaint on February 4, 2022. See Verified Complaint and Demand for Jury Trial (Doc. 12; Second Amended Complaint). Ten days later, Crosby sought leave to file a third amended complaint. See Motion Requesting Leave to Amend

6

Complaint (Doc. 17), filed February 14, 2022.  The Magistrate Judge granted Crosby's request, see Order (Doc. 22), and on March 28, 2022, Crosby filed his third amended complaint, which is the operative pleading at this time.  See Verified Complaint and Demand for Jury Trial (Doc. 23; Third Amended Complaint or TAC).[3]

The Third Amended Complaint is thirty-two pages long with ninety-three paragraphs and three counts.  Crosby names six Defendants—the State of Florida (the State), the City, Chancey Metal Products, All State Steel, Shawn Fitzgerald, and Mark Jones.  At this time, the City and the State are the only Defendants remaining in this action.  See Minute Entry (Doc. 74); Order (Doc. 96); Order (Doc. 97).  Although Crosby does appear to have corrected his more egregious pleading errors, the Third Amended Complaint remains replete with vague allegations and conclusory assertions of wrongdoing.  Indeed, Crosby's allegations are difficult to follow and largely premised on his unsupported inference that the people around him are all secretly acting on behalf of the government.  In addition, Crosby's allegations of wrongdoing rely heavily on his conclusory assertion that the actions of others are "illegal."  As explained above,

---

[3] The Court notes that from the outset of this case Crosby has filed numerous miscellaneous motions, including several motions seeking emergency injunctive relief which the Court has denied.  See, e.g., Order (Doc. 6); Order (Doc. 15); Order (Doc. 25); Order (Doc. 66); Minute Entry (Doc. 74).  In the interest of brevity, the Court does not recount this portion of the extensive procedural history.

such allegations are not entitled to an assumption of truth.  See Iqbal, 556 U.S. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").   Nevertheless, as best the Court can discern, Crosby's factual allegations are as follows.

### III.   Factual Background[4]

Generally, Crosby contends that the State and the City, at the direction of the federal government, have engaged in a long-running, wide-ranging conspiracy to frame men as child predators.  Crosby's allegations regarding the "illegal tactics" being used as part of this conspiracy are largely too vague to be comprehensible, but generally, he appears to contend that the government is using adult websites to "frame" men for soliciting minors.  See TAC ¶¶ 20, 22-23.  He connects this conspiracy to his 2007 arrest on a sex offense, his

---

[4] As stated above, in considering the City's Motion, "the court reviews a plaintiff's pro se allegations in a liberal fashion, accepts all factual allegations in the complaint as true, and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff."  See Freeman v. Fine, 820 F. App'x 836, 838 (11th Cir. 2020).  As such, the facts recited here are drawn from the Third Amended Complaint and may well differ from those that ultimately could be proved.

The Court also notes that in his Response, Crosby frequently refers to "evidence" on a CD that he filed with the Court.  See, e.g., Response at 3.  However, "'[a] court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss.'"  See Bruce v. U.S. Bank Nat'l Assoc., 770 F. App'x 960, 964 (11th Cir. 2019) (quoting Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1329 n.7 (11th Cir. 2006)).  Although there are some exceptions to this principle, id., Crosby fails to identify any basis for the Court to consider his evidence at this stage in the proceedings.  Regardless, the Court has reviewed the documents on the CD and they do not change the outcome of this Order.

conviction, and the 2015 denial of his petition for writ of habeas corpus relief in federal court.  See id. ¶¶ 20-21, 28-30; see also Motion, Ex. A.[5]  Following his conviction, Crosby maintains that he "started a non-profit organization called 'Florida Scandal' (FS) in 2011 to prove that he was framed as a child predator by the federal government in violation of his constitutional rights."  See TAC ¶ 16.  Through this organization, Crosby alleges that he has "proven that the states are framing men as child predators for money . . . ."  Id.  Now, Crosby contends that the State is retaliating against him for "expos[ing] the conspiracy," id. ¶ 19, and that the State and federal government are using "the power of office to protect the conspiracy uncovered by [Crosby] . . . ."  Id. ¶ 17.  Crosby also alleges that the Jacksonville Sheriff's Office (JSO) has been "stalking, harassing, and investigating" him due to his involvement with FS, leading to his arrest in October of 2018 for failure to register.  Id. ¶¶ 31-32; see Motion, Ex. B.  Although unclear, it appears Crosby served a term of home confinement as a result of that charge.  See TAC ¶ 37.

Significantly, Crosby alleges that he has for years engaged in his own "stings" on law enforcement in an effort "to sabotage their illegal stings and

---

[5] At the City's request, the Court takes judicial notice of the docket sheets in two state criminal cases against Crosby.  See Motion at 12 n.1, Exs. A-B; U.S. ex rel. Osheroff v. Humana Inc., 776 F.3d 805, 811 n.4 (11th Cir. 2015) ("Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage."); see also Fed. R. Evid. 201.

obtain evidence of their modis [sic] operandi being [sic] to frame men to make money." Id. ¶ 25. As relevant to this action, Crosby alleges that in November of 2018, he "came into contact with what he believed to be an undercover officer performing another sting on an anonymous chat room." Id. ¶ 34. According to Crosby, he "was mocking the officer and taunting him or her who was pretending to be a 12-year-old and he sent a picture of his genitals mocking the illegal tactics used during stings." Id. Crosby appears to view this incident as his own "sting" on law enforcement, but he acknowledges that he "went too far in this one . . . ." Id. ¶¶ 25, 34, 35, 37, 56. In connection with this incident, Crosby contends that JSO has been working with his neighbors, employers, bus drivers, and "dozens of average citizens" to "illegally" investigate and arrest him. Id. ¶¶ 36, 37, 39-42, 46-56. Crosby alleges that law enforcement has been following him everywhere, id. ¶ 48, tapping his phone, id. ¶¶ 39-41, and infiltrating his places of employment to turn his employers and coworkers against him, id. ¶¶ 42, 46. According to Crosby, the State and the City "know he is innocent of the falsely alleged criminal act [the 2018 explicit photo] but are trying to maliciously prosecute him to cover up the . . . conspiracy [to frame men as child predators] and out of revenge for [Crosby] framing the government . . . ." Id. ¶ 56. However, there are no allegations that Crosby has ever been arrested or charged with any crime in connection with this incident.

Based on the foregoing, in Count One, Crosby asserts a claim under 42 U.S.C. § 1983 against the State and the City.  <u>See</u> TAC at 13.  He titles this Count "Discriminatory Enforcement of Vague/Overbroad Statutes and Using Illegal Investigative Tactics Under 42 U.S.C. § 1983."  <u>Id.</u>  In Count Two, Crosby brings a claim against those same Defendants for "Racketeering Activities under 18 U.S.C. § 1964 & 42 U.S.C. § 1983."  <u>Id.</u> at 18.  Last, in Count Three, Crosby raises a claim for "Conspiracy to Deprive Rights 42 U.S.C. § 1983 and 18 U.S.C. § 241 & § 242" against all Defendants.  <u>Id.</u> at 21.  As to each Count, Crosby demands compensatory and punitive damages.  <u>Id.</u> at 18, 20-22, 29-30.  At the conclusion of the Third Amended Complaint, Crosby also demands "injunctions to stop his unconstitutional sex offender registration and the illegal investigation still being performed . . . ."  <u>Id.</u> at 31-32.  He also maintains that "it is required and necessary to relieve [Crosby] from the previous order illegally denying him federal habeas relief through a writ of error coram nobis or any other writ under the All Writs Act . . . ."  <u>Id.</u> at 32.

## IV.   Discussion

Despite concerted effort, the Court finds it difficult to discern the specific nature of Crosby's claims, much less which facts are intended to support which particular claims.  The wide-ranging scope of Crosby's allegations, encompassing prior convictions in 2007 and 2018, combined with conclusory

11

assertions of wrongdoing and only vague allegations of fact, make it nearly impossible to identify the specific theories of relief on which Crosby intends to rely.  Confusing the matter further, Crosby appears to combine distinct claims within a single count—such as in Count One where Crosby raises claims for "discriminatory enforcement of vague/overbroad statutes" and the use of "illegal investigative tactics."  See TAC at 13.  As such, the City's assertion that the Third Amended Complaint remains an impermissible shotgun pleading and should be dismissed on this basis is not without some merit.  See Motion at 4-7; see also Gilbert v. City of Pine Lake, Ga., No. 19-12585, 2022 WL 1162087, at *4 (11th Cir. Apr. 20, 2022) (affirming dismissal as a shotgun pleading, inter alia, where complaint "contained scattered accusations, making it uncertain, even when liberally construed, what his claims were, and to whom they pertained").  Nevertheless, given Crosby's meaningful efforts to correct his pleading deficiencies and the leniency shown to pro se pleadings, the Court will endeavor to consider the substance of his claims.

12

### A. Count Two: Racketeering Activities Under 18 U.S.C. § 1964 and 42 U.S.C. § 1983[6]

The Court finds it helpful to begin with Count Two.  In this Count, Crosby asserts a claim pursuant to the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1964.  Crosby alleges a racketeering scheme between the State and the City "that has existed since at least 2006 with just the state governments and since at least 2003 between the government and an illegal television program called [To Catch a Predator.]"  See TAC ¶ 60.  As described above, the scheme involves illegally framing men as child predators. Id. ¶ 62.  Significantly, Crosby alleges that he "is only a sex offender because he was framed by this racket and can't get out of it because of the racket." Id. ¶ 65. Crosby's RICO claim fails for several reasons.

A private plaintiff asserting a civil RICO claim must plausibly allege that the defendants: "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff."  See Cisneros v. Petland, Inc., 972 F.3d 1204, 1211 (11th Cir. 2020). Crosby's allegations, as summarized above, are wholly insufficient to establish

---

[6] It is unclear what claim Crosby intends to assert by invoking § 1983 here.  Regardless, any § 1983 claim encompassed by the racketeering allegations set forth in Count Two is barred by Heck v. Humphrey, 512 U.S. 477, 487 (1994) for the same reasons discussed below.

these elements.  However, a detailed discussion of the insufficiencies is not necessary as Crosby's RICO claim must fail regardless because it is barred by the rule set forth in Heck v. Humphrey, 512 U.S. 477, 487 (1994).[7]

Generally, Heck "bars any challenges to a previous conviction unless the conviction 'has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" See Reilly v. Herrera, 622 F. App'x 832, 833-34 (11th Cir. 2015).[8]  Although the ruling in Heck concerned § 1983 claims, "a number of other courts have held that the Heck rule applies with equal force to civil RICO claims" and the Court finds the reasoning of these cases persuasive.  See Harrison v. Grand Jurors,

---

[7] One notable deficiency is that Crosby fails to allege an injury to his business or property.  To the extent he describes his injuries at all, Crosby alleges damages that are personal in nature.  See TAC ¶ 93 (alleging that he has "suffered from extreme anxiety, mental stress, torment, treachery, relationship problems, anquish [sic], fear, and loss of liberty and freedom").  Such injuries cannot form the basis for a civil RICO action.  See Dysart v. BankTrust, 516 F. App'x 861, 864 (11th Cir. 2013); see also Grogan v. Platt, 835 F.2d 844, 847-48 (11th Cir. 1988).

[8] The Court acknowledges that the law is unsettled on whether an exception to the Heck bar could apply in cases where the plaintiff is not in custody such that habeas relief is unavailable.  See Reilly, 622 F. App'x at 834; see also Topa v. Melendez, 739 F. App'x 516, 519 n.2 (11th Cir. 2018).  But this exception, to the extent it exists, would not apply to Crosby.  Although he does not appear to be in custody at this time, he previously had the opportunity to, and in fact did, pursue habeas relief with respect to his 2007 conviction.  See Crosby v. Sec'y, Dep't of Corr., No. 8:14-cv-1654-VMC-AEP, Doc. 49 (M.D. Fla. Jan. 23, 2015) (order denying petition as time-barred).  Thus, Crosby does not fit within the parameters of whatever exception may exist for individuals who did not have the ability to pursue habeas relief.  See Reilly, 622 F. App'x at 834-35; see also Baker v. City of Hollywood, No. 08-60294-CIV, 2008 WL 2474665, at *6-7 (S.D. Fla. June 17, 2008) aff'd 391 F. App'x 819, 821 (11th Cir. 2010).

No. 3:05CV348/MCR/MD, 2006 WL 354218, at *2 (N.D. Fla. Feb. 13, 2006) (collecting cases); see also Swan v. Barbadoro, 520 F.3d 24, 26 (1st Cir. 2008) ("Heck's bar cannot be circumvented by substituting a supposed RICO action for the earlier Bivens claims ineffectually designed for the same purpose.").

Here, Crosby plainly seeks to undermine the validity of his conviction through his RICO claim as he alleges that his arrest and conviction were the result of a racketeering scheme designed to frame men, including him, as "child predators." See Stephenson v. Reno, 28 F.3d 26, 27 (5th Cir. 1994) (finding that plaintiff's lawsuit implicated his conviction where he alleged that "law enforcement officials violated his constitutional rights when they were investigating him; . . . his court-appointed counsel rendered ineffective assistance; the district court illegally indicted and sentenced him; and all of the named defendants conspired to violate his constitutional rights, obstruct justice, commit mail fraud, common-law fraud, violate RICO, and engage in 'out law [sic] conduct'"). Indeed, part of the relief Crosby seeks in this action is a writ "vacat[ing] the illegal order denying federal habeas relief . . . ." See TAC ¶¶ 1, 93. Thus, to proceed with this lawsuit Crosby must satisfy Heck's favorable termination requirement. Crosby does not allege that his 2007 criminal conviction has been overturned or called into question. To the contrary, Crosby asserts that his request for habeas relief was denied in 2015. See TAC ¶¶ 14,

15

21.    Accordingly, the <u>Heck</u> bar governs, and the RICO claim is due to be dismissed without prejudice.  <u>See</u> <u>Petersen v. Overstreet</u>, 819 F. App'x 778, 779 (11th Cir. 2020) ("[C]ases barred by <u>Heck</u> . . . are typically dismissed without prejudice . . . .").[9]

## B. Counts One and Three

Next, the Court addresses Crosby's § 1983 claims in Counts One and Three.  In Count One, Crosby asserts a § 1983 claim premised on the use of "illegal investigative tactics."[10]  In Count Three, Crosby raises a related § 1983 conspiracy claim.[11]  "In order to prevail on a civil rights action under § 1983, a

---

[9] Even absent <u>Heck</u>, Crosby's RICO claim against the State and the City would likely fail as it appears that governmental entities are not proper defendants to a civil RICO claim. <u>See</u> <u>Gil Ramirez Grp., L.L.C. v. Houston Independent Sch. Dist.</u>, 786 F.3d 400, 411-13 (5th Cir. 2015) (holding that governmental entities are not proper RICO defendants); <u>see also</u> <u>Topping v. Cohen</u>, No. 2:14-cv-146-FtM-29DNF, 2015 WL 2383630, at *12 n.12 (M.D. Fla. May 19, 2015) (collecting cases).

[10] The Court notes that the title of Count One and two allegations therein reference the "discriminatory enforcement of vague/overbroad statutes."  <u>See</u> TAC ¶¶ 48, 52.  Crosby's allegations in this regard are so conclusory that the Court is unable to discern the basis for any claim premised on discrimination, vagueness, or overbreadth.  Indeed, it is altogether unclear what statute Crosby challenges, much less what aspect of the statute Crosby contends is vague, or in what manner the statute is overbroad.  The Court also cannot identify the grounds on which Crosby claims that the investigation against him is discriminatory.  As such, the Court's analysis of Count One focuses on Crosby's challenge to the City's investigatory tactics.

[11] Crosby also invokes 18 U.S.C. § 241 and § 242 in Count Three.  <u>Id.</u> at 21.  However, these are criminal statutes that do not provide a private right of action in a civil lawsuit.  <u>See</u> <u>Bunck v. King</u>, No. 2:10-cv-735-FtM-36DNF, 2011 WL 13137378, at *3 (M.D. Fla. Sept. 8, 2011); <u>see also</u> <u>Crosby v. Catret</u>, 308 F. App'x 453, at **1 (D.C. Cir. 2009) ("The district court properly rejected appellant's attempt to invoke 18 U.S.C. § 241 and 18 U.S.C. § 242 to initiate

plaintiff must show that he or she was deprived of a federal right by a person acting under the color of state law." See Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001).  With respect to a claim for conspiracy under § 1983, a plaintiff "must allege that (1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights."  Weiland, 792 F.3d at 1327; see also Worthy v. City of Phenix City, Ala., 930 F.3d 1206, 1224 (11th Cir. 2019).

Although vague, the crux of Crosby's allegations in Count One appears to be that the City and the State are engaging in unreasonable warrantless searches.  For example, Crosby alleges that the City placed wiretaps on his phones and those of his acquaintances without a warrant, "infiltrated" his place of employment to "coerce [his] coworkers . . . to be involved in a warrantless and illegal search of Plaintiff's belongings," and "illegally" tracked his movements. See, e.g., TAC ¶¶ 39, 42, 46, 48.  As such, although not specified, Crosby appears to be alleging violations of his Fourth Amendment rights.  See Gennusa v. Canova, 748 F.3d 1103, 1109-10 (11th Cir. 2014) ("The Fourth Amendment, as

_____

a prosecution against the named defendants because there is no private right of action under these criminal statutes.").

applied to the states by way of the Fourteenth Amendment, protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" (quoting U.S. Const. amend. IV) (internal citation omitted)).

As to the claim for conspiracy, Crosby asserts that beginning sometime in 2019, his neighbor Shawn Fitzgerald initiated the conspiracy with the City and the State so that Fitzgerald could take Crosby's house.  See TAC ¶¶ 69, 73. Crosby's former employers were also allegedly members of the conspiracy. Generally, the conspiracy involved surveilling Crosby, tracking his movements, and surreptitiously providing information to law enforcement.  It appears the object of the alleged conspiracy was to have Crosby "illegally" arrested for Crosby's conduct in November of 2018, detailed above.  See TAC ¶¶ 34-35, 70, 73, 75, 77.[12]

---

[12] The Court notes that while some of the allegations in these Counts appear to relate to Crosby's previous criminal convictions in state court, see TAC ¶¶ 39, 44-45, the majority of the allegations pertain to more recent events, see, e.g., id. ¶¶ 46-55, 69, 73, 75, 81.  As such, the Court construes these claims as pertaining to allegedly improper investigatory practices unconnected to any previous criminal proceedings.  To the extent the City argues that the Court should abstain from considering Crosby's claims challenging "any ongoing investigation" pursuant to Younger v. Harris, 401 U.S. 37 (1971), see Motion at 9-10, this argument is unavailing.  The City has not identified any currently pending state criminal proceedings against Crosby.  See For Your Eyes Alone, Inc. v. City of Columbus, Ga., 281 F.3d 1209, 1217-20 (11th Cir. 2002).

Significantly, Crosby does not assert his claims in Count One or Three against the particular City officials who allegedly engaged in the unreasonable searches or conspiracy, rather, Crosby brings his § 1983 claims against the City itself.   A municipality may be liable in a § 1983 action "only where the municipality <u>itself</u> causes the constitutional violation at issue." <u>Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.</u>, 402 F.3d 1092, 1115 (11th Cir. 2005) (citations omitted).   Thus, a plaintiff must establish that an official policy or custom of the municipality was the "moving force" behind the alleged constitutional deprivation.   <u>See</u> <u>Monell v. Dep't of Social Servs. of City of N.Y.</u>, 436 U.S. 658, 693-94 (1978).   This principle applies with equal force in § 1983 conspiracy claims.   <u>See</u> <u>Weiland</u>, 792 F.3d at 1330.

"A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." <u>Sewell v. Town of Lake Hamilton</u>, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted).   The policy requirement is designed to "'distinguish acts of the <u>municipality</u> from acts of <u>employees</u> of the municipality, and thereby make clear that municipal liability is limited to action <u>for which the municipality is actually responsible</u>.'" <u>Grech v. Clayton Cnty., Ga.</u>, 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (en banc) (quotation omitted).   Indeed, municipal liability arises under § 1983 only where "'a deliberate choice to follow a course

of action is made from among various alternatives' by city policymakers." <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989) (quoting <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 483-84 (1986)). A municipality will rarely have an officially-adopted policy that permits a particular constitutional violation, therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the municipality has a custom or practice of permitting the violation. <u>See</u> <u>Grech</u>, 335 F.3d at 1330; <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004).[13] The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." <u>Sewell</u>, 117 F.3d at 489.

Upon review, the Court finds that the Third Amended Complaint is devoid of allegations sufficient to establish municipal liability as to Count One or Count Three.  Crosby does not allege that the purportedly illegal investigatory tactics are the result of an official City policy or widespread custom of engaging in warrantless wiretaps or searches.  And Crosby's conclusory allegations of conspiracy are insufficient to plausibly allege the existence of any agreement to violate his civil rights, much less one premised on an official City policy or

---

[13] Crosby does not allege that any City official acting with final policymaking authority was involved in the alleged wrongdoing, nor does Crosby include any allegations that could be construed as raising a failure to train as the basis for his theory of municipal liability.

custom.  Only one paragraph of Count One refers to the existence of a "proven pattern and practice of official misconduct and judicial corruption in this district," see TAC ¶ 56, but this conclusory allegation alone is altogether insufficient.  Indeed, it is unclear what Crosby means by this statement or to what misconduct he refers.  Notably, Crosby does not allege that the "illegal" investigatory practices regarding warrantless searches, tracking devices, and unauthorized wiretaps have been applied to others, nor does he explain how or why the City would have had notice of the purported illegal investigatory practices being used against him.

Most problematically, with respect to both claims, Crosby provides almost no factual allegations demonstrating the City's actual involvement in the conduct about which he complains.  He fails to identify a single City actor by name or description.  Instead, he infers without support that everyone around him is either an undercover officer or secretly acting on behalf of the City.  But Crosby does not provide any facts demonstrating how he determined that these otherwise anonymous individuals were undercover officers, or that his neighbors' otherwise unremarkable actions were orchestrated by the City as part of a plot against him.  As pled, the Court cannot determine whether the allegations involve the actions of one or several different law enforcement officers, or whether law enforcement officers are involved at all.

In sum, Crosby fails to allege sufficient <u>facts</u> to give rise to a plausible inference that individuals acting on behalf of the City are illegally investigating him, much less that they are doing so pursuant to an official City policy or widespread custom. And similarly, setting aside Crosby's unsupported legal conclusions and allegations too vague to be given weight, the factual allegations in the Third Amended Complaint are wholly insufficient to demonstrate that the City, pursuant to a policy or custom, reached an understanding with anyone to violate Crosby's civil rights. As such, Counts One and Three are due to be dismissed.

## C. State of Florida

Having determined that the claims against the City are due to be dismissed, the sole remaining Defendant in this action is the State. Upon review of the docket, the Court notes that the State appeared in this action on May 11, 2022, <u>see</u> Notice of Appearance of Counsel (Doc. 75), but to date, has not filed a response to the Third Amended Complaint. As such, Crosby was required to apply for default under the Local Rules of this Court. <u>See</u> Local Rule 1.10(b), United States District Court, Middle District of Florida (Local Rule(s)). He has failed to do so. Accordingly, pursuant to Local Rule 1.10(c), Crosby's claims against the State are due to be dismissed without prejudice. <u>See</u> Local

Rule 1.10(c) ("Failure to comply with a deadline in this rule can result in dismissal of the claim or action without notice and without prejudice.").

In this instance, however, the Court finds it appropriate to dismiss Counts One and Three with prejudice as Crosby's § 1983 claims against the State are futile. See <u>Tazoe v. Airbus S.A.S.</u>, 631 F.3d 1321, 1335-37 (11th Cir. 2011); <u>Woodroffe v. Fla. Dep't of Fin. Servs.</u>, 774 F. App'x 553, 555 (11th Cir. 2019). The State of Florida is not subject to suit under § 1983. See <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 64 (1989) ("[A] State is not a person within the meaning of § 1983.").

Accordingly, it is

**ORDERED**:

1. Plaintiff's Motion to Reconsider Denial Without Prejudice Relief From Judgment and Other Orders and Demand for Disqualification Pursuant to Federal Law (Doc. 115) is **DENIED** as to his request for recusal, and otherwise **DENIED as moot**.

2. Defendant City of Jacksonville's Motion to Dismiss Third Amended Complaint with Prejudice and Supporting Memorandum of Law (Doc. 53) is **GRANTED** to the extent set forth in this Order.

3. Count Two of the Third Amended Complaint (Doc. 23) is **DISMISSED without prejudice**. Counts One and Three of the Third Amended Complaint are **DISMISSED**.

4. The Clerk of the Court is directed to enter judgment, terminate all pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 8th day of March, 2023.

*Marcia Morales Howard*

**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record
Pro Se Parties

24